UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. SPENCER, JR.,

    Plaintiff,

v.                                                                                  Case No. 1:06-cv-807

                                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on July 17, 1957 and completed high school (AR 67, 96).[1] He attended a vocational welding program in 1975 (AR 96). Plaintiff initially alleged that he was disabled on August 8, 1993, but later amended his disability onset date to January 1, 2003 (AR 67, 88). He had previous employment as a welder, painter and security guard (AR 104). Plaintiff identified his disabling conditions as chronic pulmonary lung disease, chronic pain from pinched nerve in back, depression, panic disorder and a social phobia (AR 90). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on September 23, 2005 (AR 17-30). This decision, which

---

[1] Citations to the administrative record will be referenced as (AR "page #").

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff was insured for benefits through December 31, 1998, and that he had not engaged in substantial gainful activity since the alleged onset of disability (AR 28).  The ALJ noted that plaintiff's DIB claim is a moot point given his amended onset date of January 1, 2003 (AR 18), which was past the last insured date for DIB.   Second, the ALJ found that he suffered from a severe impairments of "chronic lower back pain, dysthymic disorder not otherwise specified, panic disorder, and personality disorder not otherwise specified with schizoid features" (AR 28).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 28).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) as follows:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour day; and sit for six hours out of an eight-hour day. He is able to climb ramps and stairs, stoop, and crouch occasionally.  He must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  He can

>    perform simple routine tasks in a low stress job not performed in a production or quota based environment involving simple work related decisions and in general with relatively few work place changes. He can have occasional interaction or contact with the general public, co-workers, and supervisors, which do not require the reading of written instructions or the preparation of written reports, and which require no mathematical calculation such as cashier or teller work.

(AR 29). The ALJ found that plaintiff could not perform his past relevant work (AR 29). The ALJ also found that plaintiff's allegations regarding his limitations are not totally credible (AR 28).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a significant range of light work (AR 29). The ALJ found that there are a significant number of jobs in the national economy that he can perform, i.e., 20,000 jobs as an unskilled light assembler (AR 28-29).[2] Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 29-30).

## III. ANALYSIS

Plaintiff raised three issues on appeal.

### A.    The ALJ omitted concentration limitations from the hypothetical.

First, plaintiff contends that the ALJ posed a deficient hypothetical question to the vocational expert (VE), which failed to include a limitation on his ability to concentrate.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately

---

[2] The ALJ's conclusion is based upon the vocational expert's testimony that 20,000 unskilled manufacturing positions exist in Michigan (AR 452).

portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ gave great weight to the conclusions reached by Edward Czarnecki, Ph. D., in his Psychiatric Review Technique Form (PRTF) (AR 25, 228-41). In rating plaintiff's "B" criteria for Listings 12.04 and 12.06, Dr. Czarnecki stated that plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace (AR 238). Plaintiff contends that this rating required the ALJ to incorporate a "concentration" limitation in the hypothetical question posed to the VE. I disagree.

The PRTF is an adjudicatory tool, used to evaluate a claimant's mental impairments by rating the claimant's degree of functional limitation. *Clark v. Sullivan*, No. 92-1030, 1992 WL 296709 at * 4 (6th Cir. Oct. 19, 1992). Plaintiff cites no authority, and this court is aware of none, which states that the PRTF is intended to form the framework for an ALJ's hypothetical posed to a vocational expert. On the contrary, the Sixth Circuit has rejected the argument that an ALJ commits reversible error by failing to incorporate PRTF findings into the hypothetical question posed to the VE:

> This argument is unavailing because the ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the plaintiff] had a severe impairment and whether [the plaintiff's] condition was equivalent to any of the impairments that are listed in Appendix A to the regulations. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

*Furst v. Commissioner of Social Security*, No. 99-3581, 2000 WL 282909 at *2 (6th Cir. March 13, 2000). *See also Yoho v. Commissioner of Social Security*, No. 98-1684, 1998 WL 911719 at * 3 (4th Cir. Dec. 31, 1998) (ALJ is not obligated to transfer the findings on the PRTF verbatim to the hypothetical questions).

Furthermore, the court notes that the ALJ addressed plaintiff's mental limitations in the hypothetical question posed to the VE, which assumed in pertinent part that the individual is:

> limited to simple routine repetitive tasks and a low stress job environment, which I would define as not performed in a production - or quota-based environment, and involving only simple work-related decisions and relatively few workplace changes; whch do not require reading written instructions and preparation of any written reports; which require only occasional interaction or contact with the general public or co-workers or supervisors; and which require no mathematical calculations such as a cashier or teleworker or things like that.

(AR 451). These limitations are both consistent with the Dr. Czarnecki's mental functional capacity assessment (AR 225) and sufficient to accommodate plaintiff's limited ability to concentrate.

Accordingly, the ALJ's hypothetical properly addressed plaintiff's mental limitations.

### B. The ALJ failed to either reject or credit one psychologist's opinion.

Plaintiff contends that the ALJ failed to to address the opinions expressed by a psychologist, Lynn McAndrews, Ph. D., and "*made no findings* on McAndrews' credibility." Plaintiff's Brief at 11 (emphasis in original). Dr. McAndrews examined plaintiff on June 5, 2003 (AR 210-15). Plaintiff states that while the ALJ found the non-examining consultant Dr. Czarnecki credible, he made no such credibility finding with respect to the examining consultant Dr. McAndrews. Plaintiff's Brief at 11. Plaintiff further states that the ALJ should have given good reasons for rejecting Dr. McAndrews' opinion. *Id.* at 12.

7

Plaintiff's contention is without merit. The ALJ reviewed Dr. McAndrews' evaluation in detail as part of the medical evidence (AR 22). The ALJ made no comment regarding the weight he assigned to Dr. McAndrews' opinions. The ALJ later found that Dr. Czarnecki's opinion regarding plaintiff's mental residual functional capacity was "consistent with the record as a whole" and gave the opinion "great weight" (AR 25).

Contrary to plaintiff's assertion, this is not a matter of witness credibility, but rather a question of whether the ALJ properly evaluated the medical evidence. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). It is the function of the Commissioner to resolve conflicts in the medical evidence. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984). However, it is unnecessary for an ALJ to address every piece of medical evidence. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record).

Here, the record reflects that the ALJ considered Dr. McAndrews' opinion as a part of the medical record. While the regulations require the Commissioner to "give good reasons . . . for the weight we give your treating source's opinion," 20 C.F.R. § 404.1527(d)(2), there is no requirement that an ALJ give "good reasons" for rejecting a non-treating physician's opinion. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007) (the Social Security Act's requirement under § 404.1527(d)(2) that ALJs "give good reasons" for the weight given to medical opinions applies only to treating sources).

It appears that plaintiff desires to have Dr. McAndrews' opinion given controlling weight because she assigned plaintiff a global assessment of functioning (GAF) score of 45.[3] This GAF score lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.

Even if the ALJ gave Dr. McAndrews' report great weight, a GAF score of 45 does not mandate a finding of disability. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *See also* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings"). Thus, the ALJ properly evaluated the psychologists' reports in this matter.

### C. The ALJ lacked sufficient cause to reject plaintiff's back complaints.

Finally, plaintiff contends that the ALJ improperly analyzed his back impairment. At the hearing, plaintiff testified that he hurt his back in 1982, that his pain worsened and that by 1993 he could not work due to the pain (AR 423-26). Plaintiff testified that he treats his pain by soaking in hot water and with a heating pad (AR 426). He stated that the back pain radiates into his lower left leg (AR 426). Plaintiff has sought treatment with a chiropractor, but has never been treated at a pain clinic and will not consent to back surgery (AR 428-29). He takes Percocet for pain and walks with a cane "to go long distances" (AR 429-30, 433).

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence

10

that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

I agree with plaintiff that the ALJ failed to perform an adequate review of his alleged back pain. The ALJ focused his discussion on plaintiff's lack of pain clinic treatment, surgical intervention, injections or physical therapy (AR 24). However, the ALJ failed to discuss how these treatment options applied to plaintiff's condition and summarily dismissed his claims without addressing objective medical evidence that suggested the existence of disabling pain. For example, the ALJ did not address the fact that Michael J. Simpson, M.D. found paravertebral muscle spasm present during a consultative examination on June 7, 2003 (AR 21, 221). Muscle spasms are one of the "reliable indicators" of intense pain. *Jones*, 945 F.2d at 1370.

Also, while the ALJ mentioned the "meager medical evidence" of plaintiff's back condition prior to December 31, 1998, and mentions the findings in the February 8, 2005 CT scan,

11

which included: "mild circumferential bulging of the discs of L2-4 and L5-S1 with a slightly greater central protrusion L5-S1 but no evidence of disc herniation, significant central canal or neural foraminal stenosis;" "[m]oderate hypertrophic degenerative changes facet joints L4-5; and, "[p]ossible hemangioma of the left iliac wing posteriorly" (AR 20, 329), he does not address the significance of this CT scan.  In this regard, the court notes that plaintiff's 2005 CT scan was not available to either Dr. Simpson (who examined plaintiff on June 7, 2003) or to the DDS physician (who prepared the RFC assessment on August 6, 2003 (AR 261-69).

Finally, the ALJ performed a rather superficial review of plaintiff's history of back treatment with his family doctor, Craig R. Weisse, M.D. (AR 256-60, 270-85, 286-96, 329-96). As previously noted, the ALJ is required to give good reasons for the weight given to treating physicians.   *Smith*, 482 F.3d at 876; 20 C.F.R. § 404.1527(d)(2).

In summary, the ALJ failed to address a substantial portion of the objective medical evidence related to the treatment of plaintiff's back pain. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1).  While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). In this case, the ALJ's incomplete review of the evidence relating to plaintiff's back pain precludes a meaningful appellate review of this claim.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for re-evaluation of plaintiff's claim that he suffers from disabling back pain.

Dated:  December 26, 2007         /s/ Hugh W. Brenneman, Jr.
                                  HUGH W. BRENNEMAN, JR.
                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).